FILED
ENTERED                    SERVED   N
COUNSEL/PARTIES OF RECORD

DEC 20 2007

C____  DISTRICT COURT
DISTRICT OF NEVADA

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BOBBY JEHU STROUP

    Plaintiff,

vs.

T. BISHOP, *et al.*,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)

3:07-CV-0099-BES (VPC)

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

December 19, 2007

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' MacArthur and Williamson's motion to dismiss (#14). Plaintiff opposed (#29) and filed a cross-motion for summary judgment (#30). Defendants replied (#36).[1] Also before the court is defendants' Bishop, D'Amico, and McDaniels' motion to dismiss (#17/19). Plaintiff opposed (#26) and defendants replied (#33/35).[2] The court has thoroughly reviewed the record and the motions and recommends that defendants MacArthur and Williamson's motion to dismiss (#14) be granted, that defendants Bishop, D'Amico, and McDaniel's motion to dismiss (#17/19) be granted in part and denied in part, and that plaintiff's cross-motion for summary judgment (#30) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Bobby Jehu Stroup ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#4). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* Plaintiff names

---

[1] Plaintiff also filed an unopposed sur-reply on August 31, 2007 (#38).

[2] Plaintiff filed a sur-reply on August 31, 2007 (#39). Defendants filed a motion to strike plaintiff's sur-reply (#40). The court granted defendants' motion to strike in a separate minute order (#41).

1   as defendants T. Bishop, ESP physician; Steven MacArthur, former ESP physician; L.

2   Williamson, former ESP physician; Theodore D'Amico, NDOC Medical Director; and E.K.

3   McDaniel, ESP Warden. *Id.*

4         Plaintiff alleges that after complaining to defendant Williamson of neck and back pain in

5   December 2002, plaintiff received no medical treatment. *Id.* Plaintiff further claims that even

6   after January 2003 neck x-rays revealed that he had narrowing disk space and bony growths on

7   his spine, defendant Williamson failed to treat him. *Id.* Plaintiff claims that he sent a letter to

8   defendant D'Amico in November 2003 requesting treatment for his condition and that defendant

9   D'Amico responded by telling him, "remain compliant and you will receive appropriate and

10   adequate medical attention." *Id.* Plaintiff further alleges that in February 2004, he saw defendant

11   MacArthur for neck pain, pain throughout his body, loss of balance, being disoriented, and

12   involuntary bowl movements, but that defendant MacArthur told him "there is nothing wrong

13   with you and no need for treatment." *Id.* Plaintiff asserts that he sent a kite to defendant

14   McDaniel in March 2006 telling him of his pain, but received no response. *Id.* Plaintiff then

15   allegedly verbally told defendant McDaniel of the pain, to which defendant McDaniel replied that

16   "medical" had advised him that plaintiff's complaints had been addressed. *Id.* After another x-

17   ray in June 2006, plaintiff claims he was diagnosed with "cervical spondylosis, a degenerating

18   of the cervical vertebrae and formations of bony growths on the cervical spine, osteophytes." *Id.*

19   Plaintiff alleges that, although he is still in pain, he has never received any medical treatment

20   from any of the defendants. *Id.*

21         The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff

22   appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

23   of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

24   *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

25   ///

26   ///

27   ///

28   ///

1    **II. DISCUSSION & ANALYSIS**

2    **A. Discussion**

3    **1. Motion to Dismiss Standard**

4    When considering a motion to dismiss for failure to state a claim upon which relief can

5    be granted, all material allegations in the complaint are accepted as true and are construed in the

6    light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.

7    1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). "As a general rule, 'a district

8    court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"

9    *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*,

10   14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*

11   *Clara*, 307 F.3d 1119 (9th Cir. 2002)).  However, Rule 12 provides:

12   > If, on a motion asserting the defense numbered (6) to dismiss for
     > failure of the pleading to state a claim upon which relief can be
13   > granted, matters outside the pleading are presented to and not
     > excluded by the court, the motion shall be treated as one for
14   > summary judgment and disposed of as provided in Rule 56, and all
     > parties shall be given reasonable opportunity to present all material
15   > made pertinent to such a motion by Rule 56.

16   Fed.R.Civ.P. 12(b)(6).  Notwithstanding this rule, "a motion to dismiss is not automatically

17   converted into a motion for summary judgment whenever matters outside the pleadings happen

18   to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th

19   Cir. 1983).  Conversion to summary judgment is at the discretion of the court and the court must

20   take some affirmative action before conversion is effected. *Swedberg v. Marotzke*, 339 F.3d

21   1139, 1143-44 (9th Cir. 2003).

22   **2. Summary Judgment Standard**

23   Summary judgment allows courts to avoid unnecessary trials where no material factual

24   disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

25   Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in

26   dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).

27   The court must view all evidence and any inferences arising from the evidence in the light most

28   favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In

3

1  inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed
> matters of professional judgment. In respect to the latter, our
> inferences must accord deference to the views of prison
> authorities. Unless a prisoner can point to sufficient evidence
> regarding such issues of judgment to allow him to prevail on the
> merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### 3. Deliberate Indifference to Serious Harm

A prison official violates the Eighth Amendment when he acts with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard – deliberate indifference. *Id.* at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).

The objective standard, a "serious medical need," is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find

4

important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.* Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### B. Analysis

As both plaintiff and defendants submit evidence with their motions, the court converts defendants' motions to dismiss into motions for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

#### 1. Defendants MacArthur and Williamson's Motion to Dismiss

Defendants MacArthur and Williamson argue that the complaint should be dismissed as to them because the statute of limitations has expired (#14). Plaintiff responds that equitable tolling applies because defendants "fraudulently concealed" the facts of his disease from him and because he was diligent in pursuing treatment (#29).

Section 1983 does not contain a statute of limitations; therefore, federal courts apply the forum state's statute of limitations for personal injury claims. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000). In Nevada, the statute of limitations for § 1983 actions is two years. N.R.S. 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989), *cert. denied*, 493 U.S. 860 (1989). "A motion to dismiss based on the running of the statute of limitations period

---

[3] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued *Klingele* orders on June 15, 2007 and July 10, 2007 (#15 and #20).

1   may be granted only if the assertions of the complaint, read with the required liberality, would not
2   permit the plaintiff prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68
3   F.3d 1204,1206 (9th Cir. 1995) (citation omitted). "In fact, a complaint cannot be dismissed
4   unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the
5   timeliness of the claim." *Id.* at 1207 (citation omitted). "Federal law controls the question of
6   when a claim accrues. Under federal law, a claim accrues when the plaintiff knows, or should
7   know, of the injury which is the basis of the cause of action." *Johnson*, 207 F.3d at 653 (citations
8   omitted).

9         Plaintiff alleges that he went to sick call on December 17, 2002, where he complained to
10  defendant Williamson of "serious pains with, and associated to, my neck: pain, tingling and
11  burning, loss of balance, being disoriented, which affect daily activities and I requested treatment
12  for the pain, I received none" (#4). On January 4, 2003, pursuant to his request, plaintiff's neck
13  and back were x-rayed. *Id.* Plaintiff alleges that although defendant Williamson had
14  "knowledge" of the injuries to plaintiff's neck and back from viewing the x-rays, defendant
15  Williamson refused to treat plaintiff. *Id.* Plaintiff argues that defendant Williamson did not allow
16  plaintiff to review his 2003 x-rays; therefore, plaintiff had no way to acquire knowledge of his
17  "real" condition until he was given the results of his second set of x-rays in 2006 (#29).

18        To bring an Eighth Amendment claim against defendant Williamson, plaintiff need not
19  have known the diagnosis or the name of his condition. Knowledge of the name of an
20  individual's disease is not an element of an Eighth Amendment claim; thus, allegedly concealing
21  the results of the x-rays from plaintiff is not relevant.[4] For plaintiff's claim to accrue in 2003, he
22  merely needed to know he had a "serious medical need" which defendant Williamson allegedly
23  deliberately failed to treat. Plaintiff knew in 2002 and 2003 that he had pain that defendant

24

25

26   _____

27        [4] It is clear that inmates are able to review copies of their medical records upon request. *see* #32,
     Exhibit D, and plaintiff does not argue or produce any evidence to demonstrate that he attempted to obtain
28   his records and that defendants improperly denied or withheld the x-rays from him.

1  Williamson failed to treat.[5]  Thus, plaintiff's claim accrued in 2003.  Plaintiff filed his original

2  complaint on March 1, 2007 (#2).  Based on the applicable two-year statute of limitations,

3  plaintiff's claims include the time period between March 1, 2005 and March 1, 2007.  Plaintiff's

4  claim against defendant Williamson is time-barred.

5       Equitable tolling may save a claim for which the statute of limitations has expired.  A

6  federal court will apply the forum state's law regarding tolling if it is not inconsistent with federal

7  law.  *Johnson*, 207 F.3d at 653.  "Where the danger of prejudice to the defendant is absent, and

8  the interests of justice so require, equitable tolling of the limitations period may be appropriate."

9  *Seino v. Employers Ins. Co. of Nevada*, 121 Nev. 146, 111 P.3d 1107, 1111 (2005).  Several

10  factors which Nevada courts use to determine whether equitable tolling should apply are "the

11  diligence of the claimant, the claimant's knowledge of the relevant facts, the claimant's reliance

12  of authoritative statements by the [party] that misled the claimant about the nature of the

13  claimant's rights, any deception or false assurances on the part of the [party] against whom the

14  claim is made, the prejudice to the [party] that would actually result from delay during the time

15  that the limitations period is tolled, and any other equitable considerations appropriate in the

16  particular case."  *Id.*

17       Plaintiff presents no evidence that defendants made any "false assurances" or misled

18  plaintiff in any way such that his claims should be tolled.  Plaintiff could have requested a copy

19  of his medical records if he desired to review the x-ray results; nonetheless, the court already

20  concluded that viewing the x-rays was not necessary for plaintiff to bring an Eighth Amendment

21  claim.  Much time has passed since this incident and defendant Williamson is no longer employed

22  by NDOC; thus, there is a danger of prejudice to the defendants.  The court concludes that

23  equitable tolling does not apply.

24       The same reasoning applies to the claim against defendant MacArthur.  In his complaint,

25  plaintiff makes only one allegation against defendant MacArthur – that on February 10, 2004,

26

27  [5] The court does not find that defendant Williamson acted with deliberate indifference.  The court
merely concludes that when defendants allegedly did not give plaintiff medical treatment for his pain,

28  plaintiff's claim for deliberate indifference would have accrued because he knew or should have known at
that time that defendants failed to treat his pain.

1 | plaintiff went to sick call complaining of serious neck and back pain, and defendant MacArthur

2 | failed to treat him, telling him, "there is nothing wrong with you, and no need for treatment" (#4).

3 |     Again, plaintiff would have been aware in 2004 when defendant MacArthur did not treat

4 | his complaints of pain that defendant MacArthur may have violated his Eighth Amendment

5 | rights.[6] Plaintiff presents no evidence demonstrating any of the equitable tolling factors.

6 |     The court concludes that all claims against defendants MacArthur and Williamson are

7 | time-barred and grants defendants' motion to dismiss (#14).

8 | ### 2. Defendants Bishop, D'Amico and McDaniels' Motion to Dismiss (#17/19)

9 | ### a. Defendant D'Amico

10 |     Defendant D'Amico contends that the statute of limitations has run on plaintiff's claim

11 | against him (#17, p.9). The court agrees. Plaintiff submits the letter he alleges he sent defendant

12 | D'Amico on November 13, 2003, requesting medical care for "whatever the problem is" (#26,

13 | Exhibit 1). He also submits defendant D'Amico's December 11, 2003 response telling plaintiff

14 | that plaintiff would receive appropriate case if he remained complaint. *Id.*, Exhibit 2. Plaintiff

15 | makes no other allegations in his complaint regarding defendant D'Amico. Pursuant to the same

16 | analysis as above, this claim accrued in 2003 and is time-barred.[7]

17 | ### b. Defendants Bishop and McDaniel

18 |     Defendants Bishop and McDaniel argue that plaintiff has been "consistently treated for

19 | not only his neck pain, but a myriad of other medical ailments," and that plaintiff merely

20 | disagrees with the treatment he has received (#17). Plaintiff argues that not only were defendants

21 | deliberately indifferent, they also fraudulently concealed his condition from him (#26).

---

[6] In support of his argument that the statute of limitations has not expired, plaintiff submits copies of medical kites he sent to defendant MacArthur in 2005 (#29, Exhibit 2). These kites involve specific incidents not set out in plaintiff's complaint.

[7] Moreover, the court notes that plaintiff's 2003 letter makes no mention of the issues in plaintiff's complaint, which are "pain in the neck, having aching and shooting pains in the arms and legs, numbness, dizziness, being disoriented, and being unable to complete daily functions," as well as, "tingling and burning," "loss of balance," vibrating throughout my body," and "involuntary bowel movements" (#4). Even if plaintiff's claim was not time-barred, the letter is too vague to relate to plaintiff's claims (#26, Exhibit 1) ("I have been feeling ill sence [sic] the early part of the year. I have asked the medical department to treat my illness, whatever the problem is.").

8

1    Defendants submit plaintiff's medical records covering the time period between 2000 and
2    2007 (#19, Exhibit B-1, *sealed*). The records demonstrate that plaintiff first complained of neck
3    pain on December 17, 2002. *Id.* at 26. Plaintiff had x-rays taken in early 2003. The report
4    indicated "no evidence of any acute fractures," but "narrowing of intervertebral disc spaces from
5    C5 through C7" and some "anterior osteophytes from C4 through C7." *Id.* at Exhibit B-2. The
6    specific diagnosis was "degenerative joint disease C5 through C7." *Id.*

7    Between 2003 and 2006, plaintiff consistently and frequently complained of many
8    ailments, including stomach and bowel issues, dizziness, a faster than normal heartbeat, his heart
9    skipping beats, and his body "vibrating" or "shaking" (#17, Exhibit B, pp. 8-16; *see also* #19,
10   Exhibit B-1, *sealed*). In September 2004, plaintiff requested that defendants review his 2003 x-
11   rays again (#35, Exhibit C-1, *sealed*). Defendant MacArthur noted in plaintiff's medical records
12   that plaintiff was "stable" and his blood pressure was controlled despite his complaints of
13   dizziness, and that plaintiff had incurred a prior injury to his neck from weight lifting (#19,
14   Exhibit B-1, p. 18, *sealed*) ("30 years ago hurt neck doing squats"). Plaintiff's medical records
15   also reveal mention of his neck pain in September 2005, when plaintiff complained of dizziness,
16   irregular heart beats, and sudden bowel movements (#19, Exhibit B-1, p. 16, *sealed*) ("states was
17   told at one time due to neck injury is at risk for stroke, does take aspirin"); *see also* #17, Exhibit
18   B, pp. 14-16 (revealing complaints of such symptoms during 2005 and 2006).

19   Plaintiff did not make a specific complaint about neck pain again until March 15, 2006,
20   when he sent a medical kite complaining that he had pain throughout his whole body due to the
21   vertebra in his neck (#35, Exhibit C-2, *sealed*). Nurse Lemich responded that the pain was likely
22   due to the arthritis in his neck, and that he would receive Ibuprofen. *Id.* On May 9, 2006,
23   plaintiff claimed to have "multiple compression fractures of [the] cervical spine that occurred
24   from lifting weights in the 1970's" (#19, Exhibit B-1, p. 12, *sealed*). Nurse Lemich noted that
25   the neck pain was "probably secondary to known osteoarthritis and degenerative joint disease,"
26   and ordered x-rays. *Id.* at 11. On May 29, 2006, before the x-rays returned, plaintiff complained
27   of severe neck pain, however, his records indicate that he refused a pain pack. *Id.* On June 9,
28   2006, the x-rays revealed "some narrowing of the C3-C4, C4-C5 discs with spondylosis" and

9

possible "C5-C6 disc narrowing," and plaintiff was referred to an orthopedic specialist (#19, Exhibit B-2, *sealed*).  While awaiting his appointment with the specialist over the next three months, plaintiff was at times increasingly agitated and angry and refused pain medication because he stated that it did not work (#19, Exhibit B-1, pp. 7-10, *sealed*).  At other times, plaintiff complained of pain and took the pain medication offered.  *Id.*  All the while, plaintiff continued to complain of body "vibrating," dizziness, a racing heartbeat, and stomach issues.  *Id.* at 3-12.

Plaintiff saw Dr. Rhodes, an orthopedic specialist, on September 15, 2006.  *Id.* at 3.  Dr. Rhodes recommended a cervical collar and a cervical pillow, however, plaintiff refused the cervical collar.  *Id.*  Dr. Rhodes also recommended an "EMG" of the "main muscle groups for confirmation of any myelopathy made," however, defendant Bishop noted that EMG was not available at ESP and that he would order a CT scan of the cervical spine.  *Id.*  It is not clear whether that has been completed.

Between March 2006 and February 2007, plaintiff sent sixty medical kites complaining of severe neck pain, dizziness, "vibrating" in his body, gastrointestinal issues, and a "skipping" heartbeat (#17, Exhibit B, pp. 23-29).  Defendants submit information on only one other kite prior to March 2006.  *Id.* at 23.

The evidence demonstrates that plaintiff has a degenerative, arthritic condition, with related symptoms, which the court understands to cause chronic pain.  Plaintiff's medical need is "serious" because it is "chronic and substantial" and appears to "significantly" affect plaintiff's daily activities.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

As to the subjective prong, the court does not currently have enough evidence before it to resolve this case.  Although defendants have submitted plaintiff's medical records for the relevant time period, the court does not have copies of all of plaintiff's medical kites, grievances, and defendants' responses for the statute of limitations period.  Plaintiff claims that he made many pleas for treatment over the years, which were ignored.  Without further evidence, the court is unable to determine whether defendants were deliberately indifferent to plaintiff's complaints of pain involving plaintiff's symptoms related to his cervical spondylosis between March 2005

1  and March 2007. Based on this factual issue, the court denies defendants Bishop and McDaniels'

2  motion to dismiss (#17).

3                                              **c. Qualified Immunity**

4         Defendants Bishop and McDaniel also argue that they are entitled to qualified immunity.

5  The defense of qualified immunity protects state officials sued in their individual capacities

6  unless the conduct complained of violates a clearly established constitutional or statutory right

7  of which a reasonable person would have known. *See, e.g. Jackson v. City of Bremerton*, 268

8  F.3d 646, 650 (9th Cir. 2001). A qualified immunity analysis begins with a threshold question

9  of whether, based upon facts taken in the light most favorable to the party asserting the injury, the

10  official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If

11  no constitutional right was violated, the court need not inquire further. *Id*. However, if a

12  constitutional violation occurred, the court's second inquiry is whether the official could

13  nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate a

14  clearly established constitutional right. *Id*.

15         It is clearly established that deliberate indifference to a substantial risk of serious harm

16  to an inmate constitutes an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 828

17  (1994). The next question is whether defendants violated this clearly established right. As the

18  court concluded above, there is a genuine issue of material fact as to whether defendants acted

19  with deliberate indifference to plaintiff's complaints of chronic pain, a serious medical need. If

20  there is a material dispute as to the facts regarding whether the actions of the defendants violated

21  a constitutional right, the case must proceed to trial. *LaLonde v. County of Riverside*, 204 F.3d

22  947, 953 (9th Cir. 2000), *citing Act-Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

23  Such is the case here. The court denies qualified immunity for defendants.

24                                  **3. Plaintiff's cross-motion for summary judgment**

25         In his opposition to defendants' motion to dismiss, plaintiff requests that this court grant

26  him summary judgment "for any other issue that the court deems appropriate" (#30, p. 9). Based

27  on the above findings and because plaintiff makes no legal argument on any specific issue, the

28  court declines to grant this motion.

                                                       11

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1. The statute of limitations has run as to all claims against defendant Williamson because plaintiff's claims against defendant Williamson accrued in 2003;

2. The statute of limitations has run as to defendant MacArthur because the single claim against defendant MacArthur accrued in 2004;

3. The statute of limitations has run as to defendant D'Amico because the single claim against defendant D'Amico accrued in 2003;

4. There is not adequate evidence currently before the court to determine whether defendants Bishop and McDaniel acted with deliberate indifference to plaintiff's complaints of pain;

5. Defendants Bishop and McDaniel are not entitled to qualified immunity because there is an issue of fact as to whether they acted with deliberate indifference to plaintiff's complaints of pain; and

6. Plaintiff has made no legal arguments in his cross-motion for summary judgment.

Therefore, the court recommends that:

1. Defendants MacArthur and Williamson's motion to dismiss (#14) be **GRANTED;**

2. Defendants Bishop, D'Amico, and McDaniel's motion to dismiss (#17/19) be **GRANTED IN PART** as to defendant D'Amico and **DENIED IN PART** as to defendants Bishop and McDaniel; and

3. Plaintiff's cross-motion for summary judgment (#30) be **DENIED.**

The parties are advised:

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

12

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that:

1. Defendants MacArthur and Williamson's motion to dismiss (#14) be **GRANTED**;

2. Defendants Bishop, D'Amico, and McDaniel's motion to dismiss (#17/19) be **GRANTED IN PART** as to defendant D'Amico and **DENIED IN PART** as to defendants Bishop and McDaniel; and

3. Plaintiff's cross-motion for summary judgment (#30) be **DENIED**.

**DATED:** December 19, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

13