**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| BOBBY JEHU STROUP, | ) | |
| | ) | 3:07-CV-00099-BES-VPC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| T. BISHOP, et al., | ) | |
| | ) | |
| Defendants. | ) | November 13, 2008 |
| ——————————————————— | ) | |

     This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#60).  Plaintiff opposed (#62) and defendants replied (#63).  The court has thoroughly reviewed the record and the motion and recommends that defendants' motion for summary judgment (#60) be granted.

**I.  HISTORY & PROCEDURAL BACKGROUND**

     Plaintiff Bobby Jehu Stroup ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#4). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right against cruel and unusual punishment. *Id.*  Plaintiff names as defendants T. Bishop, ESP physician; Steven MacArthur, former ESP physician; L. Williamson, former ESP physician; Theodore D'Amico, NDOC Medical Director; and E.K. McDaniel, ESP Warden. *Id.* The District Court dismissed all claims against defendants MacArthur, Williamson, and D'Amico in its December 20, 2007, Report and Recommendation, because they were barred by the statute of limitations (#49, adopted and accepted by District Judge Brian Sandoval (#53)). Therefore, only plaintiff's claims against defendants Bishop and McDaniel remain at issue. Plaintiff alleges that defendants Bishop and McDaniel were deliberately indifferent to his serious medical need because they failed to treat his cervical spondylosis. In its Report and Recommendation, the court

1  found that plaintiff's condition was serious, but that it did not have enough evidence before it to

2  determine whether defendants' subjective state of mind was deliberately indifferent.

3      The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the

4  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff

5  the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th

6  Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

7                      **II.  DISCUSSION & ANALYSIS**

8      **A.     Discussion**

9           **1.     Summary Judgment Standard**

10     Summary judgment allows courts to avoid unnecessary trials where no material factual

11  disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

12  Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in

13  dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).

14  The court must view all evidence and any inferences arising from the evidence in the light most

15  favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In

16  inmate cases, the courts must

17              [d]istinguish between evidence of disputed facts and disputed
                matters of professional judgment.  In respect to the latter, our
18              inferences must accord deference to the views of prison
                authorities.  Unless a prisoner can point to sufficient evidence
19              regarding such issues of judgment to allow him to prevail on the
                merits, he cannot prevail at the summary judgment stage.
20

21  *Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could

22  differ on the material facts at issue, however, summary judgment should not be granted.

23  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

24      The moving party bears the burden of informing the court of the basis for its motion, and

25  submitting evidence which demonstrates the absence of any genuine issue of material fact.

26  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

27  the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

28  must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477

1    U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for

2    discovery, against a party who fails to make a showing sufficient to establish the existence of an

3    element essential to that party's case, and on which that party will bear the burden of proof at

4    trial.  *Celotex*, 477 U.S. at 322-23.

5         **B.       Analysis**

6         Plaintiff alleges that he sought medical care from defendants throughout 2005 and 2006,

7    but that defendants acted with deliberate indifference by repeatedly refusing to treat plaintiff's

8    chronic pain, and in doing so violated his Eighth Amendment rights.

9              **1.       Deliberate Indifference to Serious Medical Need**

10        A prison official violates the Eighth Amendment when he acts with "'deliberate

11   indifference' to a substantial risk of serious harm to an inmate."  *Farmer v. Brennan*, 511 U.S.

12   825, 828 (1994).  To establish an Eighth Amendment violation, a plaintiff's case must satisfy an

13   objective standard – that the deprivation was serious enough to amount to cruel and unusual

14   punishment, and a subjective standard – deliberate indifference.  *Id*. at 834; *see also Wilson v.*

15   *Seiter*, 501 U.S. 294, 297-304 (1991).

16        The objective standard, a "serious medical need," is met if the failure to treat a prisoner's

17   condition could result in further significant injury or the "unnecessary and wanton infliction of

18   pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The Ninth Circuit's examples of serious

19   medical needs include "the existence of an injury that a reasonable doctor or patient would find

20   important and worthy of comment or treatment; the presence of a medical condition that

21   significantly affects an individual's daily activities; or the existence of chronic and substantial

22   pain."  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

23   The subjective standard of deliberate indifference requires "'more than ordinary lack of due care

24   for the prisoner's interests or safety.'"  *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475

25   U.S. 312, 319 (1986).  The requisite state of mind lies "somewhere between the poles of

26   negligence at one end and purpose or knowledge at the other."  *Id.* at 836.  It is the equivalent of

27   recklessly disregarding a substantial risk of serious harm to the inmate.  *Id.* To prove deliberate

28   indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally

1   interfered with medical treatment or that the way prison staff provided medical care indicates
2   deliberate indifference, and that plaintiff sustained damages as a result of such conduct.
3   *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Prison medical staff do not
4   violate the Eighth Amendment simply because their opinion concerning medical treatment
5   conflicts with the opinion of the inmate-patient.  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th
6   Cir. 1981).

7                    **2.        Deliberate Indifference Analysis**

8           In its December 19, 2007, Report and Recommendation, the District Court found that
9   plaintiff met the objective standard because "[t]he evidence demonstrates that plaintiff has a
10  degenerative, arthritic condition, with related symptoms, which the court understands to cause
11  chronic pain. Plaintiff's medical need is 'serious' because it is 'chronic and substantial' and
12  appears to 'significantly' affect plaintiff's daily activities." (#49, p. 10, *citing Lopez*, 203 F.3d at
13  1131). The court found that it could not determine whether the subjective test had been satisfied
14  because it did not have enough evidence before it to resolve all issues of fact. The court stated,
15  "Although defendants have submitted plaintiff's medical records for the relevant time period, the
16  court does not have copies of all of plaintiff's medical kites, grievances, and defendants'
17  responses for the statute of limitations period. Plaintiff claims that he made many pleas for
18  treatment over the years, which were ignored. Without further evidence, the court is unable to
19  determine whether defendants were deliberately indifferent to plaintiff's complaints of pain
20  involving plaintiff's symptoms related to his cervical spondylosis between March 2005 and
21  March 2007." *Id*. p. 10-11.

22          In the instant motion for summary judgment, defendants attach presumably all of
23  plaintiff's medical kites and grievances, as well as defendants' responses. Defendants contend
24  that plaintiff has been consistently treated for his illness, and  merely disagrees with the treatment
25  he received, which cannot form the basis of a deliberate indifference claim (#60, p. 7-8).
26  Defendants analogize plaintiff's complaints to those of the plaintiff in *Estelle v. Gamble*, in which
27  the Supreme Court found that despite the fact that the plaintiff disagreed with the treatment
28  received, the prison officials had, at best, committed medical malpractice, which does not rise to

4

1   the level of a constitutional violation. *Id.*, *citing Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976).

2   Plaintiff asserts that "there is no evidence in the record proving the plaintiff has been treated with

3   any 'medications' that remedied or relieved [his pain]" (#62, p. 9). Plaintiff concedes that he "was

4   seen many times," but argues that defendants "refused to treat" him. Plaintiff also acknowledges

5   that defendants provided him with a cervical pillow to help relieve his pain, but contends and that

6   his "pain was not relieved and the cervical pillow was too little, too late," because he did not

7   receive it until 125 days after Nurse Lemich reported plaintiff's condition to him. *Id.* at p. 2, 10-

8   12. Defendants argue that while it is undisputed that plaintiff was never given or offered

9   narcotics, plaintiff was "regularly and consistently offered Ibuprofen to treat his pain," and that

10  plaintiff refused the Ibuprofen on several occasions (#63, p. 2). Defendants also state that Dr.

11  Rhodes, the orthopedic specialist who saw plaintiff, prescribed the cervical pillow and a cervical

12  collar, but that plaintiff refused the cervical collar. *Id.* p. 3. Based on this evidence, defendants

13  assert that plaintiff was offered treatment, that plaintiff often times refused the treatment, and that

14  plaintiff is thus trying to base his claim for deliberate indifference "on a difference of opinion

15  between himself and licensed medical physicians." *Id.* p. 4**.**

16      Plaintiff was diagnosed with cervical spondylosis in June 2006, after an x-ray report

17  revealed that his disc space was narrowing, his vertebrae were degenerating and "thorn-like"

18  growths were apparent on his cervical spines (#60, exh. C-1, p. 35). With their previous motion

19  to dismiss, defendants filed an *in camera* submission of plaintiff's medical records (#19, *sealed*).

20  Even with these records, the court could not resolve all issues of material fact because plaintiff

21  claimed he made many pleas for treatment, which were ignored, and the court did "not have

22  copies of all of plaintiff's medical kites, grievances, and defendants' responses for the statute of

23  limitations period" (#49, p. 10). Defendants have now presented the court with all of plaintiff's

24  kites and grievances and defendants' responses to both. This evidence reveals that plaintiff made

25  many health complaints and that he did receive medical attention and some treatment. By the

26  court's count, plaintiff filed about 100 medical kites, not including duplicates, from March 2005

27  to March 2007 (#60, exh. D). About sixty-six of these concerned plaintiff's spondylosis or related

28  symptoms. The remaining kites requested refills on plaintiff's atenolol prescription for high blood

1   pressure, or treatment for a variety of other symptoms or disorders, including a rash, skipping

2   heart beats, ear problems, weakness and dizziness, and a skin infection. The court was also unable

3   to read some kites due to poor copy quality. As far as the court can tell, plaintiff received a

4   response to all but one of his kites related to his spondylosis.[1] Plaintiff also filed multiple

5   grievances regarding his medical care.[2]

6         Medical staff examined and treated plaintiff on multiple occasions for numerous maladies.

7   Plaintiff was prescribed ibuprofen, a cervical pillow, and a cervical collar to alleviate his neck

8   pain. Plaintiff refused to take the cervical collar because "he has bony thorn-like growths (spurs

9   on his spine) and to rap (sic) a collar around his neck could be counter productive" (#62, p. 14).

10   Plaintiff also refused ibuprofen on several occasions, and on one occasion, specifically requested

11   he be given diazepam, cyclobenzaprine, or carisoprodol (#60, p. 182). Plaintiff argues that he

12   "received no treatment for his pain, nor was any pain relief offered" (#62, p. 14). The court

13   disagrees. Defendants consistently offered pain medication to plaintiff. Plaintiff may have wanted

14   different pain medication, but such disagreement does not constitute deliberate indifference.

15

16       [1]On August 17, 2006, plaintiff asked to be fitted for an orthopedic pillow. No response was

17   apparent on the kite (#60, exh. D, p. 180). However, plaintiff did receive an orthopedic pillow at some point because he submitted numerous kites requesting instructions on how to use the pillow.

18   *Id*. p. 164-166. Plaintiff's medical records also reflect that he received the pillow (#19, exh. B-4).

19       [2] In the statute of limitations period, plaintiff first filed grievance number 2005-24-13312,

20   in which he complained that he had kited because of stomach pains, and that he had seen a nurse twice, but never a doctor, and that he was requesting treatment. Defendants denied this grievance and

21   informed plaintiff that his medication had been adjusted to alleviate his stomach pain (#60, ex. C-4, p. 19). Plaintiff next filed grievance number 2006-24-4587, stating that he had requested medical

22   attention because he thought he was having a stroke, and that medical would not treatment. Defendants responded that plaintiff had been seen by medical for an evaluation, and that he should

23   kite if he has additional problems. *Id*., exh. C-4, p. 10. Plaintiff filed grievance number 2006-24-

24   12909, which was returned to him because it referred to specific claims or incidents that plaintiff had previously filed in grievance number 2006-24-10031. *Id*., ex. C-1, p. 39). In grievance 2006-24-

25   10031, plaintiff complained that the medical staff at ESP had refused to treat him. Defendants denied this grievance because plaintiff had been seen by medical staff, his "x-rays were reviewed and it was

26   determined there was no significant findings to cause concern." *Id*., exh. C-3, p. 4. Plaintiff also filed an emergency grievance on June 27, 2006, numbered 2006-24-9933, in which he claimed that the

27   medical department at ESP was refusing to treat him. Defendants informed plaintiff that medical

28   would be notified of his complaints. *Id*., exh. C-2.

1  Additionally, although plaintiff claims that a cervical collar would have exacerbated his neck

2  pain, he has pointed to no evidence that by providing such treatment, defendants recklessly

3  disregarded a substantial risk of serious harm to plaintiff[3].

4          Even if the cervical collar, pillow, and ibuprofen were inadequate to fully alleviate

5  plaintiff's pain, defendants were not deliberately indifferent. Plaintiff filed at least 100 medical

6  kites, and defendants responded to all of them. Plaintiff filed five grievances, all of which moved

7  through the full grievance process and to which defendants responded, and medical personnel,

8  including nurses, physicians, and a specialist, saw plaintiff on at least fifty-five occasions between

9  March 2005 and March 2007 (#19, exh. B-1, p. 1-34). Averaging this, plaintiff was seen twice

10  a month by medical staff during this two-year period. Although it appears that plaintiff never

11  received a CT scan, even though Dr. Bishop stated he would order one (#19, exh. B-1, p. 3), this

12  omission does not constitute deliberate indifference to plaintiff's serious medical needs.

13  Defendants took an x-ray of plaintiff's neck, treated him with pain medication and orthopedic

14  devices, tested and treated him for other ailments, and prescribed him blood pressure medication.

15  The court does not doubt that plaintiff's arthritis causes him pain. However, plaintiff has not

16  demonstrated that defendants "denied, delayed, or intentionally interfered with medical

17  treatment." Plaintiff may feel that stronger pain medication was necessary to fully alleviate his

18  pain. However, the medical personnel who treated plaintiff disagreed and prescribed ibuprofen.

19  Prison medical staff do not violate the Eighth Amendment simply because their opinions

20  concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v.*

21  *Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). At most, defendants have committed medical

22  malpractice by failing to prescribe narcotics or order a CT scan. Defendants have presented

23  adequate evidence to demonstrate that they were not deliberately indifferent to plaintiff's serious

24

25          [3] The court notes that the treatment defendants provided appears to be medically
26  recommended, at least in some cases. The Mayo Clinic states that mild cases of cervical spondylosis
   may respond to "wearing a neck brace (cervical collar) during the day to help limit neck motion and
27  reduce nerve irritation, [t]aking nonsteroidal anti-inflammatory drugs such as ibuprofen...for pain
   relief...." *See* Cervical spondylosis, treatments and drugs, http://www.mayoclinic.com/health/
28  cervical-spondylosis/DS00697/DSECTION=treatments-and-drugs (last visited on 11-14-08).

1   medical needs. Plaintiff has not presented evidence sufficient to satisfy the subjective prong of

2   deliberate indifference. Therefore, as no issues of material fact exist, defendants' motion for

3   summary judgment is granted.[4]

4                                    **III. CONCLUSION**

5          Based on the foregoing and for good cause appearing, the court concludes that plaintiff

6   has not demonstrated that defendants were deliberately indifferent to plaintiff's serious

7   medical needs. As such, the court recommends that defendants' motion for summary

8   judgment (#60) be **GRANTED**.

9          The parties are advised:

10         1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

11  Practice, the parties may file specific written objections to this report and recommendation

12  within ten days of receipt.  These objections should be entitled "Objections to Magistrate

13  Judge's Report and Recommendation" and should be accompanied by points and authorities

14  for consideration by the District Court.

15         2.    This report and recommendation is not an appealable order and any notice of

16  appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District

17  Court's judgment.

18                                 **IV.  RECOMMENDATION**

19         **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary

20  judgment (#60) be **GRANTED**.

21         **DATED:** November 14, 2008.

22

23         _____

24         **UNITED STATES MAGISTRATE JUDGE**

25

26  _____

27         [4]Defendants also raised the defense of qualified immunity in their motion for summary
    judgment. However, as the court grants the motion, it declines to decide whether qualified immunity
28  applies.

                                          8